IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANJUANA INEZ LOERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-cv-1271-M |
| | § | |
| AUTOMATION PERSONNEL | § | |
| SERVICES, INC. F/K/A | § | |
| AUTOMATION TEMPORARY | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Docket Entry #20]. For the reasons stated below, the Motion is **GRANTED**.

*Background*

This is an action for damages arising out of injuries sustained by Sanjuana Inez Loera ("Loera"), when a piece of industrial equipment called a "palletizer top frame" fell and hit her on the neck at her workplace, Amcor Pet Packaging USA, Inc. ("Amcor"). Loera was an ordinary employee of Amcor. Faisal Ibrahim Labaran ("Labaran"), a temporary employee of Amcor, was handling the palletizer top frame at the time of the accident. Defendant Automation Personnel Services, Inc. ("Automation"), a temporary employment service, hired Labaran, and in response to Amcor's request for a machine operator/general laborer, placed Labaran at Amcor. Once at Amcor, Labaran was under the complete and exclusive supervision and direction of Amcor.

On June 13, 2008, Loera filed suit against Automation in County Court at Law No. 3 in Dallas County, Texas. In her Original Petition, Loera claimed Automation was vicariously liable for the injuries Loera sustained from the allegedly negligent conduct of Automation's employee,

Labaran, and directly liable for Automation's own negligence. Automation removed the case to this Court on July 25, 2008. On March 31, 2009, Automation moved for summary judgment on all claims against it. Loera has not responded to Automation's Motion for Summary Judgment.

Loera first pleads vicarious liability under the theory of respondeat superior. Respondeat superior involves the negligent conduct of an employee, not of an employer.[1] Loera alleges Labaran was negligent in handling the palletizer top frame, causing it to fall and injure her, and asserts, under the respondeat superior theory, that Automation is vicariously liable for Labaran's negligent conduct. Loera also pleads theories of Automation's direct negligence, asserting that Automation was negligent in: (1) failing to supervise Labaran;[2] (2) failing to provide proper assistance to Labaran in the performance of his work; and (3) failing to promulgate safety practices and rules for Labaran to follow, while Labaran worked at Amcor.[3]

Automation argues that two affirmative defenses relieve it of vicarious liability. First, Automation argues that the borrowed servant doctrine applies and shifts vicarious liability from Automation to Amcor. Second, Automation argues that the exclusivity provision of the Texas Workers' Compensation Act bars Loera's action. Automation also seeks summary judgment on the direct negligence claims, arguing it had no duty to perform the functions that Loera alleges Automation failed to perform because Amcor, not Automation, supervised Labaran and that any breach that occurred is therefore Amcor's, not Automation's.

---

[1] *See Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995).
[2] *See Morris v. JTM Materials*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.) ("Negligent . . . supervision claims are . . . causes of action based on an employer's direct negligence rather than on vicarious liability.").
[3] While Loera actually raises five separate allegations of Automation's negligent conduct, three are readily categorized as a failure to supervise: ". . . a. Allowing the employee to work in an unsafe manner; b. Allowing the employee to work without keeping a proper lookout; . . . d. Failing to properly supervise, so as to prevent this type of injury from occurring . . . ." Pl.'s Original Pet. and Req. for Disclosure 2-3.

*Summary Judgment Standard*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, and the affidavits and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[4] "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[5] The moving party may satisfy its burden by pointing out that the evidence in the record is insufficient to prove an essential element of the nonmoving party's claim, so long as the moving party does not bear the burden of proof on that element at trial.[6] If the movant seeks summary judgment based on an affirmative defense, the movant must show the absence of a genuine issue of material fact and establish each element of the defense as a matter of law.[7] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.[8] The nonmovant is required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact.[9] "Only evidence—not argument, not facts in the complaint—will satisfy the burden."[10]

The moving party must establish the absence of a genuine issue of material fact before it can prevail on a summary judgment motion.[11] The mere fact that the nonmoving party did not

---

[4] *See* FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[5] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).
[6] *See Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, No. 05-1978, 2006 WL 2548166, at *3 (E.D. La. Aug. 31, 2006), *adopted by*, 520 F.3d 409 (5th Cir. 2008).
[7] *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).
[8] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).
[10] *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (quoting *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991)) (internal quotations omitted).
[11] *See Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-23 (5th Cir. 1995).

oppose the motion is an insufficient basis for the grant of summary judgment.[12]  However, a district court does not have a duty "to scour the record in search of a fact issue" on the nonmovant's behalf.[13]

In determining whether genuine issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists.[14]  A district court properly grants summary judgment if, when viewing the facts in the light most favorable to the nonmovant, the movant shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law.[15]

*Analysis*

**I.      Vicarious Liability**

Automation argues that the borrowed servant doctrine applies to this case and shifts vicarious liability from Automation to Amcor.  In Texas, the borrowed servant doctrine applies where an employee of a general employer is "loaned" to a special employer, while maintaining his employment with the general employer.[16]  When the "right of control" of an employee shifts from the general employer to the special employer, respondeat superior liability also shifts to the special employer.[17]  Which entity has the right of control is the key factor in determining which employer is liable.[18]  Where no contract between the general employer and special employer delineates the right of control, the determination is made by examining the facts and

---

[12] *See id.*
[13] *See Saddler v. Quitman County Sch. Dist.*, No. 07-60656, 2008 WL 2073887, *5 n.19 (5th Cir. May 16, 2008).
[14] *Lynch Props.*, 140 F.3d at 625; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).
[15] FED. R. CIV. P. 56(c).
[16] *See Spriggs v. Sirinek*, 402 F. Supp. 2d 739, 743 (W.D. Tex. 2004).
[17] *See Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1998).
[18] *See id.*

circumstances in the record.[19] The employer who directed the "details and manner of work" and who controlled the "very transaction out of which the injury arose" is deemed to have the right of control.[20]

The borrowed servant doctrine is typically invoked when a temporary staffing agency hires an employee and then assigns the employee to another employer.[21] In *Morales v. Acadia Elastomers Corp.*, an employee was assigned to a special employer by a temporary employment agency; his arm was crushed by a gasket press, which he operated while working for the special employer.[22] The court determined the plaintiff was a borrowed servant because the special employer directed and supervised the plaintiff's work, which was conducted on the special employer's premises using the special employer's equipment, in furtherance of the special employer's business.[23]

Because Automation pleads the borrowed servant doctrine as an affirmative defense, Automation must affirmatively establish the elements of that defense. Automation supports its Motion for Summary Judgment with affidavits from an Automation employee and an Amcor employee. Automation's Staffing Coordinator, Leticia Sanchez, states in her Affidavit that Labaran was not directed or controlled by Automation while he worked at Amcor:

> Mr. Labaran received his daily assignments, job training, safety training, directions as to when and how to do his job, directions as to what tasks to perform each day, and even directions as to when he could take breaks, from his Amcor supervisors, and never from me or anyone else associated with Automation.[24]

---

[19] *Morales v. Acadia Elastomers Corp.*, No. Civ.A. H-04-3401, 2006 WL 778625, at *2 (S.D. Tex. Mar. 27, 2006).
[20] *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 426 F. Supp. 2d 565, 573 (S.D. Tex. 2006). An employer normally exercises control over matters such as "when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result." *Morales*, 2006 WL 778625, at *2 (quoting *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990)).
[21] *See Morales*, 2006 WL 778625, at *1.
[22] *Id.*
[23] *Id.* at *7.
[24] App. of Def. in Supp. of Mot. for Summ. J. 2.

Labaran's supervisor at Amcor, Willie Harris, states in his Affidavit that Amcor exclusively instructed and directed the "method and manner" of Labaran's work, that Labaran "received all instructions and directions . . . from Amcor," that Automation did not have supervisors at Amcor, and that only Amcor employees directed and supervised Labaran's work.[25]  Loera's injury occurred on Amcor's premises.  Labaran's handling of the top frame, on Amcor's premises and in furtherance of Amcor's day-to-day operations, was the "very transaction out of which the injury arose."[26]  These facts are analogous to those in *Morales*, where a similarly situated special employee was held to be a borrowed servant.[27]

Automation has put forth sufficient evidence to establish that Labaran was Amcor's borrowed servant.  Loera has presented no evidence to the contrary to prove the existence of a genuine issue of material fact.  The Court concludes that the borrowed servant doctrine applies and Automation is therefore not liable under Plaintiff's vicarious liability claim.  The Court need not reach Automation's additional affirmative defense under the Texas Workers' Compensation Action exclusivity provision.[28]

## II.     Direct Negligence

Loera alleges that Automation was negligent in: (1) failing to supervise Labaran; (2) failing to provide proper assistance to Labaran in the performance of his work; and (3) failing to promulgate safety practices and rules for Labaran to follow, while Labaran worked at Amcor.  Automation responds that it was under no duty to supervise Labaran, and because Amcor was in a better position to do so, any breach should be attributable to Amcor.

---

[25] App. of Def. in Supp. of Mot. for Summ. J. 3-4.
[26] *See Morales*, 2006 WL 778625, at *7; *XL Specialty*, 426 F. Supp. 2d at 573.
[27] *See Morales*, 2006 WL 778625, at *7.
[28] *See* TEX. LAB. CODE ANN. § 408.001(a) (Vernon 2006).

Negligence actions require a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.[29] An employer's duty to use reasonable care in providing supervision is a nondelegable and continuous duty owed to its employees.[30] Employers, in carrying out their duty to use ordinary care in providing a safe workplace, must provide rules and regulations for their employees' safety.[31] Employers also have a duty to provide adequate help for co-employees in the performance of their work.[32]

To prevail at summary judgment, Automation must identify evidence that it believes demonstrates the absence of a genuine issue of material fact, i.e., evidence of who supervised Labaran while he worked at Amcor. The Sanchez and Harris Affidavits both state that Automation neither had supervisory personnel nor exercised supervision on Amcor's premises. The affidavits establish that Automation's supervisory relationship with Labaran ended when he was placed at Amcor; at that point, Labaran was exclusively directed, supervised, and controlled by Amcor. Loera has not presented contrary evidence to prove the existence of a genuine issue of material fact. The Court concludes that Automation had no duty of supervision as to Labaran when he worked at Amcor.

Automation's consistent response to all of Loera's direct negligence claims is that it did not operate in the manner Loera alleges and it did not have a duty to do otherwise. The failure to provide assistance and failure to promulgate safety practices and rules claims are similar to the

---

[29] *D. Houston, Inc. v. Love*, 92 S.W.2d 450, 457 (Tex. 2002).
[30] *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 754-55 (Tex. 1975) (finding fifteen-year-old ranch hand, because of his age, lack of experience, and nature of the job, should have had a supervisor when he was rounding up cattle); *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 459 (Tex. App.—Tyler 1996, no writ) (holding employer fulfilled duty to supervise by having written policy against sexual harassment, requiring employees to sign the policy, and discussing the policy at training sessions).
[31] *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding employer had no duty to adopt rules about ordinary dangers of driving even where employee caused automobile accident in performance of job responsibilities and was fatigued from working long hours).
[32] *Id.* at 149-50 (finding employer did not breach duty to provide adequate help even though employee worked longer than usual hours because store was short-staffed).

failure to supervise claim, in that they involve specific conduct related to Amcor's business, over which Automation did not have authority. This analysis and conclusion, that Automation did not supervise and did not have a duty to supervise, apply to Loera's other direct negligence claims, as well.

Because Automation did not have a duty to supervise Labaran, to provide adequate assistance, or to promulgate safety practices and rules related to his work at Amcor, Automation is not directly liable for the negligence alleged.

*Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** on all claims, and the Court will enter a judgment that Plaintiff take nothing on her claims.

**SO ORDERED**

August 7, 2009.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**